## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**CORY CURL,**

    Plaintiff,

    v.

**SCOTT DAMMEYER, et al.,**

    Defendants.

CASE NO. 3:21 CV 2229

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

*Pro se* Plaintiff Cory Curl brings this 42 U.S.C. § 1983 civil rights action against Allen County Deputy Sheriffs Scott Dammeyer and Robert Wintersteller. (Doc. 8). Currently pending before the Court is Defendants' Motion to Dismiss. (Doc. 12). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

### BACKGROUND

Plaintiff brings claims based on events at his home in Lima, Ohio on the evening of November 26, 2019. Plaintiff's home is located on a rural county road and is set back at least 120 feet off the road; the home and front yard are somewhat obscured by landscaping. (Doc. 8, at 3). It was a moonless or dark night. *Id.*

The Allen County Sheriff's office received a 911 call from an unidentified caller at 8:06 p.m. alleging there was a disturbance in the front yard of Plaintiff's home. *Id.* Defendants were dispatched and arrived around 8:24 p.m. *Id.* They did not see any activity, but "entered the curtilage of the Plaintiff's home without a warrant." *Id.* Wintersteller later testified he did not see any

subjects in the yard, he only saw a man and woman sitting in the front room of the home, and it did not look like they had been fighting. *Id.*

Plaintiff was alerted by motion lights and saw someone walking through his yard; he went to the man door of the attached garage where he encountered Wintersteller. *Id.* at 3-4. Dammeyer, who had been in the backyard, then appeared at the door as well. *Id.* at 4. Wintersteller wanted to check on Plaintiff's wife. *Id.* Plaintiff went back into the garage and attempted to close the door; both Defendants "stuck their foot in the door stopping it from being closed." *Id.* Both Defendants then entered Plaintiff's home, "forc[ed] him outside . . . bloodening [Plaintiff's] face in the process". *Id.* Dammeyer admitted Plaintiff's face "was bloodied" but denied either Deputy had anything to do with it. *Id.*

Even though Plaintiff's wife told Defendants there was no altercation, Plaintiff was arrested, taken to the County Jail, and booked for disorderly conduct by intoxication and resisting arrest; he was released on a recognizance bond. *Id.* at 5. Plaintiff filed a motion to suppress, and the state court held a suppression hearing on February 10, 2020. *Id.* Following the hearing, the parties submitted written arguments regarding suppression, and on February 26, 2020, the court granted Plaintiff's motion to suppress all evidence and statements related to the incident. *Id.* On March 13, 2020, all charges against Plaintiff were dismissed at the prosecutor's request. *Id.*

Plaintiff brings three claims for relief. First, he asserts constitutional violations under 42 U.S.C. § 1983, specifically: (1) Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures "by illegally arresting him, using excessive force to do so, and searching him" and his property at the man door to his garage and in his backyard, (2) Defendants violated his Fifth Amendment right to due process "by depriving [him] of his liberty through an arrest not made in accordance with law"; and (3) Defendants violated his Fourteenth Amendment

"right to due process and equal protection of the law." (Doc. 8, at 6). Second, he asserts a conspiracy charge under 42 U.S.C. §§ 1985(3) and 1986. Third, he asserts common law tort claims of false arrest, false imprisonment, malicious prosecution, and "the infliction of physical and emotional distress". *Id.* at 9. He seeks compensatory damages, punitive damages, and an order that the Sheriff "enforce appropriate policies and practices to prevent future instances of the type of misconduct described in this lawsuit." *Id.* at 10.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the Court tests the complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[T]he court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The Court is required to accept the factual allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the non-moving party. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation". *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A court generally may not consider documents outside the pleadings when deciding a motion under Rule 12(b)(6). *Gunasekera v. Irwin*, 551 F.3d 461, 469 n.4 (6th Cir. 2009). However, the Sixth Circuit "has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Documents "referred to in a complaint and central to the claim, [which are] attached to a motion to dismiss

form part of the pleadings." *Id.* "[I]f extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Id.* (citing *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

### DISCUSSION

Defendants have moved to dismiss Plaintiff's original complaint and his amended complaint. For the reasons discussed below, the Court finds Plaintiff's Amended Complaint to be the operative pleading and grants in part and denies in part Defendants' motion to dismiss it.

Operative Pleading

At the outset, the Court must determine the operative pleading in the instant case. Defendants originally moved to dismiss Plaintiff's Complaint on March 28, 2022. (Doc. 6). On April 27, 2022, Plaintiff filed a response in opposition (Doc. 7) and simultaneously filed an unsigned Amended Complaint (Doc. 8).

Federal Civil Rule 15 provides that a party may amend its pleading once as a matter of course "21 days after service of a motion under Rule 12". Fed. R. Civ. P. 15(a)(1)(B). Plaintiff's Amended Complaint was filed on April 27, 2022, 30 days after Defendants' motion. *See* Doc. 8.[1]

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay,

---

1. The Amended Complaint contains a Certificate of Service indicating it was mailed on April 15, 2022. (Doc. 8, at 11). But in a non-prisoner suit, the mailing date is not the filing date. *See West v. Adecco Emp. Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) ("Courts have refused to excuse *pro se* litigants who failed to follow basic procedural requirements such as meeting 'readily comprehended' court filing deadlines." (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Eglinton v. Loyer*, 340 F.3d 331, 335 (6th Cir. 2003)).

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In their Reply in support of the original motion to dismiss, Defendants noted the untimely filing, but also observed the Amended Complaint "essentially renders Defendants' March 28, 2022 motion to dismiss (Doc. 6) moot." (Doc. 11). Defendants then filed a second motion to dismiss Plaintiff's Amended Complaint (Doc. 12), to which Plaintiff filed an opposition (Doc. 14), and Defendants replied (Doc. 15).

Given the fully-briefed motion to dismiss the Amended Complaint, the Court construes Plaintiff's Amended Complaint as a motion for leave to file such a pleading, and grants such leave. As such, the Amended Compliant is the operative pleading.[2]

Facts Considered

Before performing any analysis, the Court must also determine which facts from the pleadings are appropriately considered. The Court is required to accept the factual allegations stated in the complaint as true. *Westlake*, 537 F.2d at 858. In addition to the factual allegations stated in the Amended Complaint, Plaintiff referenced the state court suppression hearing (and related filings) and a report or letter written by Defendant Dammeyer. *See* Doc. 8, at 4. In their Motion to Dismiss, Defendants referenced the same report by Dammeyer, and filings from the

---

2. Accordingly, Defendants' Motion to Dismiss the original Complaint (Doc. 6) and Motion to Strike Plaintiff's Sur-Reply (Doc. 13) are hereby denied as moot.

current Plaintiff and current Defendants from the state court proceedings underlying this action. (Doc. 12, at 4, 5).

Generally, the court cannot consider documents outside the pleadings when deciding a motion under Rule 12(b)(6). *Gunasekera*, 551 F.3d at 469 n.4. But in the Sixth Circuit, public records and materials "referred to in a complaint and central to the claim, [which are] attached to a motion to dismiss form part of the pleadings." *Armengau*, 7 F. App'x at 344. "[I]f extrinsic materials merely fill in the contours and details of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Id.* (internal citation omitted). But the purpose of analysis at the motion to dismiss stage "is to assess the factual sufficiency of the complaint without resort to materials outside of the pleadings." *Davis v. Davis*, 2015 WL 13187145, at *2 (6th Cir.). The Court "is not required to accept conclusory allegations or unwarranted legal conclusions" at this stage. *Armengau*, 7 F. App'x at 344.

Plaintiff referenced the state court suppression hearing and the Dammeyer report in the Amended Complaint, but did not attach these materials. *See* Doc. 8, at 3-4. Defendants attached the Dammeyer report and two state court filings related to the suppression hearing to their Motion to Dismiss. *See* Doc. 6-1; Doc. 6-2; Doc. 6-3. While the state court proceedings are documented in public records, the pleadings, as pieces of legal advocacy by each party, are no more factual evidence than the present Motion to Dismiss, and primarily bolster the legal conclusions each party wanted the state court to make. The Court will not "accept conclusory allegations or unwarranted legal conclusions" at this stage. *Armengau*, 7 F. App'x at 344. Because the relevant factual matter from the suppression hearing is alleged in the Amended Complaint itself, to the extent the filings state legal conclusions or facts contradictory to the Amended Complaint the Court will not consider them.

Defendants use the Dammeyer report to set forth new facts in their Motion to Dismiss, many of which conflict with the facts alleged in the Plaintiff's Amended Complaint. For example, Defendants include in the Motion to Dismiss descriptions from Dammeyer's report of Plaintiff's "level of resistance" to the Defendants (Doc. 12, at 5), while Plaintiff characterizes his attitude toward the Defendants as upset but nonaggressive (Doc. 8, at 4). Claiming that Dammeyer's characterization of events is the correct one "assumes police veracity . . . even in the face of a contradictory [filing] by [the other party]." *Thomas v. Arnold*, 696 F. Supp. 2d 882, 886 (N.D. Ohio 2010) (holding that such an assumption was not acceptable to resolve a question of fact even at the summary judgment stage).

"Every fact witness testifies as to what was seen, heard, touched, smelled, or tasted." *Id.* Dammeyer's report is a narrative of his recollection of the events underlying Plaintiff's claims; it is not inherently more trustworthy than Plaintiff's version of events. By challenging Plaintiff's credibility, it does far more than "fill in the contours and details of [the] complaint". *Armengau*, 7 F. App'x at 344 (internal citation omitted). It is inappropriate at the motion to dismiss stage, when the Court is "required to accept the factual allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the non-moving party", to use the Dammeyer report to discredit the factual allegations in Plaintiff's Amended Complaint. *Westlake*, 537 F.2d at 858. To the extent the Dammeyer report attached to Defendants' Motion to Dismiss contradicts Plaintiff's Amended Complaint it will not be considered by the Court.

<u>Motion to Dismiss</u>

Plaintiff brings three claims in his Amended Complaint: (1) constitutional violations of his Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, (2) a conspiracy charge under 42 U.S.C. §§ 1985(3) and 1986, and (3) the state common law torts of false arrest, false

imprisonment, malicious prosecution, and "the infliction of physical and emotional distress". The Court addresses each in turn.

*Constitutional Claims Under § 1983*

Plaintiff claims Defendants violated his Fourth, Fifth, and Fourteenth Amendment constitutional rights. To bring a successful § 1983 claim, Plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Defendants argue none of these claims meet the minimum pleading standards of Rule 8(a) and ought to be dismissed. Defendants additionally argue they are shielded from Plaintiff's Fourth Amendment claims by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense; once a defendant raises it, the burden shifts to the plaintiff to demonstrate: (1) the defendant's acts violated a constitutional right; and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).

*Fourth Amendment*

Plaintiff describes four moments in the encounter with Defendants underlying his Fourth Amendment claim: Defendants' presence on the property, Defendants' "knock and talk" conversation with Plaintiff at (and subsequent entry through) the man door of the garage, Defendants' use of excessive force against Plaintiff, and Defendants' arrest of Plaintiff.

Plaintiff alleges Defendants "entered the curtilage" of his home without a warrant. (Doc. 8, at 12). Plaintiff specifically references Defendants' presence at the door of his garage,

presumably via a driveway of some sort, and in the backyard. *Id.* at 3-4. Plaintiff's home is on a rural county road, at least 120 feet off the road, "somewhat obscured" by landscaping; on the night in question, it was very dark. *Id.* at 3. The Fourth Amendment protects the "curtilage" of a house – the area "immediately surrounding a dwelling house" – and "the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). There are four factors set forth in *Dunn*: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301.

There is no clearly established law holding a garage or driveway is always protected by the Fourth Amendment. In a case where a detached garage was "within natural boundaries demarcated by the river and [ ] heavy tree coverage[,] . . . not readily visible from the street[,] . . . [and] set far back from the road", it was considered within the home's curtilage. *United States v. May-Shaw*, 955 F.3d 563, 571 (6th Cir. 2020) (quoting *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 599-601 (6th Cir. 1998)). But in a case where a carport and a driveway were neither enclosed nor obstructed from view, they were not so "intimately linked to the home" to fall within the curtilage. *Id.* at 571. Here, Plaintiff's garage was attached to the home and set far back from the road. Drawing all facts and inferences in the light most favorable to Plaintiff, the darkness of the night may have also impeded visibility. These facts weigh in favor of inclusion in the curtilage. But while the house is "somewhat obscured" by landscaping, Plaintiff makes no mention of whether the garage and driveway are obscured, and the property is on a rural county road. These facts weigh in favor of exclusion from the curtilage. Because of the conflicting case law and *Dunn* factors, and

9

taking the facts in the light most favorable to Plaintiff as the Court must at this stage, it was not clearly established law that Plaintiff's driveway and garage were within the curtilage of his home and protected by the Fourth Amendment. Defendants are entitled to qualified immunity as to their presence in the driveway and at the garage.

Plaintiff also contests Defendant Dammeyer's presence in the backyard. The Sixth Circuit held in *United States v. Jenkins* that a backyard of a home is part of its curtilage and individuals have "a reasonable expectation that their backyard would remain private and free from physical invasion." 124 F.3d 768, 773 (6th Cir. 1997). The Circuit reiterated its stance in 1998 by stating "the law seems relatively unambiguous that a backyard abutting the home constitutes curtilage and receives constitutional protection" and citing *Jenkins* for the proposition "that one's backyard is definitely part of the curtilage". *Daughenbaugh*, 150 F.3d at 601-03. At the time of the encounter, it was clearly established law that a backyard is protected by the Fourth Amendment as the curtilage of a home.

Plaintiff next alleges Defendants carried out an unconstitutional search during their conversation with Plaintiff at the garage man door. During this encounter, Plaintiff tried to go back into the garage and close the door, but each Defendant stuck a foot in the door so it could not be closed. (Doc. 8, at 4). The "knock and talk" rule allows officers without warrants to enter the curtilage of a home and knock on the door to speak with the occupants or ask for consent to a search. *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). Plaintiff alleges Defendant Wintersteller admitted "Curl made it clear 'he didn't give us permission to go into his residence'." (Doc. 8, at 4). In their argument for qualified immunity, Defendants rely upon *Smith v. City of Wyoming* for the proposition that there are "no cases holding that preventing the closure of the

door to a home to briefly extend a consensual interview violates the Constitution". 821 F.3d 697, 714 (6th Cir. 2016).

Three years after *Smith*, the Sixth Circuit recognized that "the Supreme Court clarified in *Jardines* that a police officer without a warrant . . . [ ]absent invitation to linger longer[ must] leave." *Watson v. Pearson*, 928 F.3d 507, 513 (6th Cir. 2019) (citing *Florida v. Jardines*, 569 U.S. 1, 8 (2013) ("As it is undisputed that the detectives had all four of their feet and all four of their companion's firmly planted on the constitutionally protected extension of Jardines' home, the only question is whether he had given his leave (even implicitly) for them to do so. He had not.")). Additionally, the Sixth Circuit at this point had expressly stated the *Jardines* decision overruled two Sixth Circuit cases that allowed officers to linger and intrude beyond their invitation. *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018) (holding the *Jardines* decision meant *Hardesty v. Hamburg Twp.*, 461 F.3d 646 (6th Cir. 2006) and *Turk v. Comerford*, 488 F. App'x 933 (6th Cir. 2012) were no longer good law).

Plaintiff alleges at least one Defendant knew Plaintiff had not given permission for Defendants to enter his home. (Doc. 8, at 4). Plaintiff also tried to close the door, which Defendants prevented by physically blocking the doorway with their feet. *Id.* Defendants would have had no reason to do so if they thought Plaintiff was providing an "invitation to linger longer." *Watson*, 928 F.3d at 513. By the time they blocked the door with their feet, Defendants were not "extend[ing] a consensual interview". *Smith*, 821 F.3d at 714. When the events underlying the Amended Complaint occurred in November 2019, Defendants were on notice of the Supreme Court decision in *Jardines* (2013) and the Sixth Circuit decisions in *Morgan* (2018) and *Watson* (June 2019). It was clearly established law that officers cannot extend a "knock and talk" conversation absent invitation to remain.

Defendants argue exigent circumstances permitted both intrusions because they "were dispatched on a call of possible domestic violence." (Doc. 12, at 14). Plaintiff states the dispatch of Defendants to his home was made for an allegation of a disturbance in Plaintiff's front yard. (Doc. 8, at 3). He adds that Defendant Wintersteller "wanted to check on [Plaintiff]'s wife because there was a report of some domestic disturbance." *Id.* at 4.

The doctrine of exigent circumstances allows an officer to carry out a search or seizure that would otherwise be contrary to law if there exist real, immediate, and serious consequences that would occur if the officer postponed the acquisition of a warrant. *See, e.g.*, *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994). For exigent circumstances to exist, "there must be a need for prompt action by government personnel, and a conclusion that delay to secure a warrant would be unacceptable under the circumstances." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 490 (6th Cir. 2014) (internal quotations omitted).

The "need to protect or preserve life or avoid serious injury" is a legitimate exigent circumstance. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). So is the need to "prevent[] imminent or ongoing physical abuse within a home." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 695 (6th Cir. 2013) (quoting *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010)). The "emergency aid" exigency requires "an objectively reasonable basis for believing that a person within the house is in need of immediate aid." *Williams v. Maurer*, 9 F.4th 416, 432 (6th Cir. 2021) (quoting *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam)). The proper inquiry to determine whether an officer is entitled to the defense of qualified immunity via exigency doctrine is "whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002).

"[Q]ualification for this exception is not easy and requires a particularized showing of a risk of immediate harm." *Morgan*, 903 F.3d at 562. "[G]eneric possibilities of danger cannot overcome the required particularized showing of a risk of immediate harm." *Id.* (citing *United States v. Purcell*, 526 F.3d 953, 960 (6th Cir. 2008)). Particularized circumstances considered exigent by the Sixth Circuit include, for example, those where officers had credible evidence a man was mentally disturbed, had brandished a shotgun in front of others, and made threats to use the gun (*Ewolski*, 287 F.3d at 502); where a 911 dispatch reported to the officers that shots had been fired and a radio communication "indicated that the subject had threatened to kill any police officer who arrived on the scene" (*Hancock v. Dodson*, 958 F.3d 1367, 1375 (6th Cir. 1992)); and where six gunshots had been reported to officers and officers had found bullet casings outside the home in question (*Causey v. City of Bay City*, 442 F.3d 524, 529-30 (6th Cir. 2006)). The Supreme Court has found exigency where officers found a smashed and bloody pickup truck, damaged fenceposts, broken windows, and a man "screaming and throwing things" at a residence (*Michigan v. Fisher*, 558 U.S. 45, 45-46 (2009)) and where officers arrived at a residence and witnessed a violent fight that sent an "adult to the sink spitting blood" (*Brigham City v. Stuart*, 547 U.S. 398, 406 (2006)). Courts have held exigent circumstances do not exist due to "the mere presence of firearms" (*United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)) or when officers have "called for backup to surround the house and secure the area, thereby slowing down and controlling the action," even when the officers had probable cause to believe the subject had committed an assault (*O'Brien*, 23 F.3d at 997).

In *Williams v. Maurer*, the Sixth Circuit considered a case where officers responded to an anonymous 911 call reporting screaming, broken glass, and a fight between a man and a woman at a particular residence; arrived to find broken glass on the ground but no signs of forced entry;

and observed no other signs of disturbance around the residence or through the window. 9 F.4th at 423-24. The court found there was a genuine dispute of material fact as to whether these were exigent circumstances and defendants were not entitled to qualified immunity. *Id.* at 438. In so holding, the panel surveyed other decisions from the circuit courts and the Supreme Court regarding exigency in similar circumstances. "Only when an 'anonymous tip [is] suitably corroborated' does it 'exhibit[ ] sufficient indicia of reliability to provide reasonable suspicion'" to make an investigatory stop or search. *Id.* at 432 (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)). This is especially so for searches of a home versus public stops, "because 'Defendants [ ]relied on the anonymous 911 call to justify an invasion of the sanctity of a private dwelling ordinarily afforded the most stringent Fourth Amendment protection.'" *Id.* at 433 (quoting *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir. 2001)). "[S]omething more than just the anonymous phone call [is] needed to allow Defendants to enter Plaintiffs' home without a warrant." *Id.*

Because such a particularized showing is required, the existence of exigent circumstances is typically decided by a court rather than a jury only "in a case where the underlying facts are essentially undisputed." *Hancock*, 958 F.3d at 1375. While the facts may be undisputed at any stage of a case, they are usually more developed after discovery has taken place. At the motion to dismiss stage, the Court must "view[] the facts entirely as presented in the complaint" and "[d]raw[] all reasonable inferences in favor of [the plaintiff]." *Keeton v. Metro. Gov't of Nashville & Davidson Cnty.*, 228 F. App'x 522, 524 (6th Cir. 2007). In *Maurer*, the 911 call included a description of a loud fight, and officers found broken glass on the ground. 9 F.4th at 423-24. The Sixth Circuit still held the officers were not entitled to qualified immunity.

> [A]ccepting Plaintiffs' version of the facts, a reasonable jury could find that Defendants' warrantless entry into Plaintiffs' home violated the Fourth

> Amendment's prohibition against unreasonable searches. And if the jury finds that
> there was no exigent circumstance, then . . . Defendants' warrantless entry into
> Plaintiffs' home violated clearly established law.

*Id.* at 438. In the instant case, viewing the facts in the light most favorable to Plaintiff, Defendants

knew even less than the officers in *Maurer*: they knew only from an unidentified 911 caller that

there was a domestic disturbance of some kind at Plaintiff's residence; upon arrival, they found no

indication of such a disturbance visible from outside or through the window. (Doc. 8, at 3-4).

Any other knowledge Defendants had which would indicate real, immediate, and serious

consequences absent a warrantless search is either disputed by the parties or entirely unalleged.

Because at this stage, taking the facts in the light most favorable to Plaintiff, a reasonable juror

could find there were no exigent circumstances justifying Defendants' entry into Plaintiff's

backyard or placing of their feet in Plaintiff's door, they cannot currently be afforded qualified

immunity on either claim. If, at a later stage in the case, Defendants can make "a particularized

showing of a risk of immediate harm" that includes "something more than just the anonymous

phone call", they may certainly raise the affirmative defense of qualified immunity before this

Court again. *Morgan*, 903 F.3d at 562; *Maurer*, 9 F.4th at 433.

Plaintiff next asserts an excessive force claim. He alleges his face was "blooden[ed]" in the

process of his arrest and Defendant Dammeyer "admitted that Curl's face was bloodied". (Doc. 8,

at 4). Defendants argue Plaintiff has failed to satisfy Rule 8(a)(2) as it relates to any claim of

excessive force. (Doc. 12, at 18). This is so, they contend, because Plaintiff "fails to provide

sufficient factual matter that gives Defendants fair notice of the grounds upon which an excessive

force claim rests" and because he "offers only impermissible conclusory allegations". *Id.*

Defendants are correct. Rule 8(a)(2) requires a plaintiff to make "a short and plain statement of the

claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. Plaintiff has not stated any facts describing how his face was bloodied or who bloodied his face; he alleges only that his face was bloody. This is insufficient to give Defendants fair notice of anything more than speculation regarding the basis for Plaintiff's claim, and so Plaintiff's excessive force claim is dismissed.

Plaintiff's final Fourth Amendment claim relates to his arrest by Defendants for disorderly conduct by intoxication and resisting arrest. Plaintiff argues that because the state court found Defendants had no authority for Plaintiff's arrest and granted his motion to suppress all evidence, which led to the prosecutor's dismissal of all charges against Plaintiff, Defendants violated his clearly established Fourth Amendment rights. (Doc. 8, at 5). Defendants contend the arrest was reasonable because "probable cause exist[ed] where there [was] a probability or substantial chance of criminal activity." (Doc. 12, at 17) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal citations omitted)). Defendants further argue they are entitled to qualified immunity even if they did not actually have probable cause for the arrest, because "law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Wheeler v. City of Cleveland*, 2009 WL 10680170, *9 (N.D. Ohio) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Defendants are correct that the state court decision is not dispositive of the issue. *Heck v. Humphrey* prevents a Section 1983 claim from proceeding if it necessarily implies the invalidity of a state conviction or sentence. 512 U.S. 477, 487 (1994). But in this case, there is no state conviction or sentence to invalidate; there is only a ruling on a motion to suppress evidence. The

Sixth Circuit holds "that the State of Ohio's contesting a suppression motion does not give arresting officers 'a full and fair opportunity to litigate their position as privies of the State of Ohio.' . . . Thus, [it does] not allow a plaintiff to use issue preclusion offensively to prevent an officer from arguing that a search held unconstitutional in a state suppression hearing was, in fact, constitutional in a later § 1983 suit." *Thomas v. Plummer*, 489 F. App'x 116, 123 (6th Cir. 2012) (quoting *Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005). The same is true for seizures. *Potts v. Hill*, 77 F. App'x 330, 335 (6th Cir. 2003) ("under Ohio law, a § 1983 plaintiff cannot use issue preclusion against his arresting officers in evaluating the constitutionality of the arrest even if the state court that acquitted the plaintiff found that a constitutional violation took place").

Defendants may litigate this issue, despite Plaintiff's citation to the state court record. But Defendants' entitlement to qualified immunity rests on whether they were reasonable to conclude they had probable cause to arrest Plaintiff, which depends heavily upon "the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information". *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016). A court must look at "the totality of the circumstances, and must take account of both the inculpatory and exculpatory evidence then within the knowledge of the arresting officer." *Id.* (internal quotations and citations omitted). The facts and circumstances surrounding Plaintiff's arrest are highly contested by the parties. It would be inappropriate for this Court to make a determination regarding those facts and circumstances at this stage of the case. In some cases, analysis of affirmative defenses such as qualified immunity can be properly addressed at the motion to dismiss stage, as "one of the goals of qualified immunity is not only to help defendants avoid unnecessary trials but also to allow defendants to avoid pre-trial discovery where the lawsuit is 'insubstantial.'" *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

808 (1982)). But when the facts at the pleading stage remain undeveloped and uncertain, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *In re Flint Water Cases*, 960 F.3d 303, 324 (6th Cir. 2020). Because Plaintiff has plausibly claimed he was unconstitutionally arrested by Defendants, and the factual record on this issue remains in contest, this Court declines to extend the defense of qualified immunity to Defendants as to Plaintiff's arrest at this stage of the case.

### Fifth Amendment

Plaintiff alleges a violation of his Fifth Amendment right to due process. Defendants argue any claim Plaintiff attempts to raise under the Fifth Amendment must be dismissed. "[T]he Fifth Amendment's Due Process Clause applies only to actions by the federal government." *Haertel v. Mich. Dep't of Corr.*, 2021 WL 4271908, at *3 (6th Cir.). Because Plaintiff alleges no action by the federal government in violation of his rights, the Court agrees with Defendants and dismisses Plaintiff's Fifth Amendment claim.

### Fourteenth Amendment

Plaintiff's Complaint alleges no facts amounting to a violation of the Fourteenth Amendment other than those that comprise his Fourth Amendment claims. Because the Fourteenth Amendment claim duplicates the Fourth Amendment claim, it must be dismissed. *See Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.").

18

*Conspiracy Claim*

Plaintiff brings conspiracy claims against Defendants, alleging they conspired to commit the acts giving rise to his other claims. (Doc. 8, at 7). Defendants contend Plaintiff's §§ 1985 and 1986 claims must be dismissed because, *inter alia*, § 1985(3) requires some discriminatory animus and (2) a claim under § 1986 is barred by the one-year statute of limitations.

Plaintiff's § 1985(3) claim necessarily fails because he has not alleged that any conspiracy deprived him of the "equal protection of the laws" or the "equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3). "To avoid turning § 1985(3) into a generic tort law covering any injury inflicted by two parties, the Supreme Court has interpreted these two phrases to require 'some racial, or perhaps otherwise *class-based*, invidiously discriminatory animus behind the conspirators' action." *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added in *Post*). Plaintiff's Amended Complaint contains no such allegations of discriminatory animus.

Plaintiff's § 1986 claim must be dismissed because his cause of action accrued when he was arrested by Defendants on November 26, 2019, and he filed this case more than one year later, on November 23, 2021. *See* 42 U.S.C. § 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").

Further, any § 1983 conspiracy claim must also be dismissed. To avoid dismissal of his conspiracy claim, Plaintiff needed to allege facts showing "'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive [him] of [his] constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled

19

that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).

Plaintiff's Amended Complaint alleges only that Defendants "entered into an agreement and conspired among themselves to engage in unlawful conduct," "have each done and/or have caused to be done acts in furtherance of this conspiracy," "had actual knowledge of the conspiracies", and "had the power and opportunity to prevent the violations from occurring and/or continuing". (Doc. 8, at 7-8). These "conclusory allegations or legal conclusions masquerading as factual allegations" are insufficient to state a claim. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)). Plaintiff's conspiracy claims are therefore dismissed.

*State Tort Claims*

Plaintiff brings state tort claims of false arrest, false imprisonment, malicious prosecution, and "infliction of physical and emotional distress."[3] (Doc. 8, at 9). Defendants argue they are protected by state law immunity and the statute of limitations for each of these claims.

Each of these torts is governed by a one-year statute of limitations under Ohio Revised Code § 2305.11(A). *See Crist v. Pugin*, 2008 WL 2571229, at *1-2 (N.D. Ohio) (holding the one-year statute of limitations applies to false arrest, false imprisonment, and intentional infliction of emotional distress when the former underly the latter) ("False arrest includes false imprisonment; therefore, the one-year statute of limitations provided in the above-referenced statute applies. . . .

---

3. There is no tort commonly called "infliction of physical and emotional distress." The Court construes this phrase in Plaintiff's Amended Complaint as an intentional infliction of emotional distress claim and a battery claim.

[W]hen the acts underlying the [intentional infliction of emotional distress] claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress. . . . Accordingly, the statute of limitations for false imprisonment applies to this emotional distress claim.") (internal citations omitted); *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 300 (1994) (referencing the one-year statute of limitations for malicious prosecution claims under Ohio law); *Brown v. Holiday Inn Express & Suites*, 118 N.E.3d 1021, 1024 (Ohio Ct. App. 2018) (holding intentional battery claims in Ohio have a one-year statute of limitations).

The events underlying Plaintiff's Amended Complaint occurred November 26 and 27 of 2019. (Doc. 8, at 2). Plaintiff filed his original Complaint on November 23, 2021, almost two years later. *See* Doc. 1. Because Plaintiff filed his Complaint nearly a year too late, his state tort claims are dismissed.

*Official Capacity Claims*

Plaintiff brings all claims against Defendants "in their individual and/or official capacities". (Doc. 8, at 6). "[A] suit under § 1983 against a defendant 'in his official capacity' is equivalent to a suit against the local government entity." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). Local governments can only be held liable for purposes of § 1983 when the constitutional deprivation occurs as the result of an official custom or policy of the municipality. *Smith v. City of Troy*, 874 F.3d 938, 946 (6th Cir. 2017) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)). A municipality cannot be held liable under § 1983 under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Additionally, "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held

liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Plaintiff has not alleged facts to support a constitutional violation by Defendants in any of his claims except the two Fourth Amendment violations adequately alleged as described above. But even as to these two claims, Plaintiff also has not alleged any facts amounting to an "official custom or policy" of Allen County which caused the deprivation of his rights. All claims against Defendants in their official capacities are therefore dismissed.

*Abandonment of Claims*

In reply, Defendants argue "Plaintiff has failed to respond to any of the legal arguments raised in Defendants' Motion to Dismiss[.] . . . As a result, Plaintiff has effectively abandoned each of his claims, and dismissal of Plaintiff's Amended Complaint is warranted." (Doc. 16, at 1). Plaintiff filed a "Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint" in which he attempted to respond Motion despite an apparent lack of understanding of how legal defenses such as qualified immunity operate. *See* Doc. 14, at 1 ("Defendants raise issues not in evidence . . ."). Plaintiff also filed a response to Defendants' reply in support of their motion to dismiss (essentially a sur-reply without leave). (Doc. 18).

Defendant is correct that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion [to dismiss], then the district court *may* deem the plaintiff to have waived opposition to the motion." *Scott v. State of Tennessee*, 1989 WL 72470, at *2 (6th Cir.) (emphasis added). But in *Scott*, the *pro se* plaintiff "failed to make a timely response to defendants' motion" at all. *Id.* Additionally, most of the cases Defendants cite for this proposition involve parties with legal representation, not *pro se* plaintiffs. *See, e.g.*, *Ullmo v. Ohio Tpk. & Infrastructure Comm'n*, 126 F. Supp. 3d 910 (N.D. Ohio 2015); *Corso v. Hamilton Cnty.*, 2021 WL 2829170 (S.D. Ohio);

22

*Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 875 F. Supp. 2d 780 (W.D. Tenn. 2012). Finally, Defendants argue a *pro se* plaintiff, such as Plaintiff in this case, must "still make some effort at argumentation or presentation of facts." *Weatherby v. Fed. Express*, 454 F. App'x 480, 490 (6th Cir. 2012). But the *Weatherby* court held as such regarding the *pro se* plaintiff's appeal, not her response to a motion to dismiss. *Id.* By filing an opposition in which he addresses, albeit briefly, the content of Defendants' Motion to Dismiss, Plaintiff has made some effort at argumentation.

Defendants cite no binding law requiring this Court to dismiss a complaint in the present circumstances, where a *pro se* Plaintiff filed a response to Defendants' Motion to Dismiss which attempts to respond to Defendants' arguments but misses the mark. Because "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," and Plaintiff filed responses to both Defendants' motion to dismiss and Defendants' reply in support of that motion in an apparent attempt to maintain his suit, this Court declines, in the interests of substantial justice, to construe Plaintiff's claims as abandoned. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 12) be, and the same hereby is, DENIED as to Plaintiff's § 1983 claims against Defendants for violations of Plaintiff's Fourth Amendment rights as to Defendant Dammeyer's presence in Plaintiff's backyard, both

Defendants' prevention of Plaintiff's attempt to close his door, and both Defendants' arrest of Plaintiff; and GRANTED as to all other claims.

 s/ *James R. Knepp II*　　　　　　　
UNITED STATES DISTRICT JUDGE